**Louis GIARRUSSO, Plaintiff,**

v.

**CITY OF CHICAGO, et al., Defendants.**

**No. 81 C 1346.**

United States District Court,
N. D. Illinois, E. D.

May 28, 1982.

Robert Minetz, Ben Goldwater, Chicago, Ill., for plaintiff.

Robert W. Fioretti, Asst. Corp. Counsel, James R. Carroll, Asst. Atty. Gen., Sp. Litigation, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

BUA, District Judge.

Plaintiff, Louis P. Giarrusso, brings this action pursuant to 42 U.S.C. § 1983 alleging that he was unlawfully deprived of his liberty by defendants when he was incarcerated between May 5, 1980 and December 4, 1980 on the basis of an allegedly false charge of motor vehicle theft. Jurisdiction

is asserted pursuant to 28 U.S.C. § 1343. Plaintiff, in addition to his civil rights claim (Count I)[1] which is asserted against all defendants, also asserts claims of 1) false imprisonment against all defendants, 2) malicious prosecution against defendants Mario Garcia and the City of Chicago, and 3) negligence against all defendants. The cause comes before the court on the Motions to Dismiss of Defendants City of Chicago, Mario Garcia, John Castro, Ray Johnson and Pedro Garcia and the Motion for Summary Judgment of Defendant Shelby Rowe.

## FACTS

Plaintiff alleges that on or about March 16, 1980, the Defendant Mario Garcia, along with Defendants Pedro Garcia and John Castro, all police officers employed by the City of Chicago on the relevant date, prepared a Chicago Police Department General Offense Case Report stating that the plaintiff was guilty of the theft of a vehicle owned by Mario Garcia. The report was prepared, it is alleged, despite the fact that defendants knew or should have known that the plaintiff was not guilty of criminal conduct. Rather, plaintiff claims, defendant Mario Garcia instituted the false complaint merely to collect a debt owed Garcia by the plaintiff. (Complaint, Count III, ¶ 4).

Plaintiff further asserts that Defendant Ray Johnson, also a police officer, reviewed the charges instituted by the Plaintiff, determined that the charges were unfounded, informed the Defendant Mario Garcia of this determination and yet failed to inform the Auto Reporting Desk that the charges were unfounded. It is also charged that Johnson failed to remove the vehicle from the Chicago Police Department's stolen vehicle file.

As a result of these events, plaintiff was arrested on May 8, 1980 and incarcerated from that date until December 4, 1980. It appears that Mr. Giarrusso was unable to leave jail on bond because of the issuance of a warrant for his arrest based on an alleged parole violation by the plaintiff. This warrant was issued by Shelby Rowe despite the fact that according to plaintiff, Rowe knew or should have known that no just cause existed for the warrant because plaintiff was in full compliance with the terms of his parole.

## THE CITY OF CHICAGO'S MOTION TO DISMISS

■ There is no question that a municipality may be held liable as a "person" under § 1983. *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Liability may not, however, be based solely on a theory of respondeat superior. *Id.* at 691, 98 S.Ct. at 2036. Rather, a municipality may be required to respond in damages only for that unconstitutional action which either

1. "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or
2. constitutes a "governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels."

*Id.* at 690–91, 98 S.Ct. at 2035–36. It is the latter type of "official policy" for which plaintiff seeks to hold the City of Chicago responsible in the instant case. This type of policy has been defined to include the tacit or implied approval, authorization or encouragement of police misconduct. *Turpin v. Mailet*, 619 F.2d 196, 201–202 (2d Cir.), *cert. den. sub. nom., Turpin v. West Haven*, 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980).

■ There is substantial controversy in this district as to the appropriate level of specificity required to adequately plead a *Monell* policy claim of the type charged

---

1. All references to plaintiff's complaint refer to his Third Amended Complaint filed February 23, 1982.

here against a municipality; *compare e.g. Rivera, et al. v. Donald Farrell et al.*, 538 F.Supp. 291 (N.D.Ill.1982) and *Means v. The City of Chicago*, 535 F.Supp. 455 (N.D.Ill. 1982). This court is of the view, however, that such a complaint must be dismissed if, when subjected to careful examination, the complaint appears to have merely attached a conclusory allegation of "policy" to what is in essence a claim based on a single unconstitutional act. *See Rivera* at 298. This Court believes that this is such a case. Accordingly, plaintiff's § 1983 claim against the City is dismissed.

The facts of the case have already been set out. With regard to the City of Chicago, plaintiff has made the following allegations:

A. The Chicago Police Department initiated the criminal prosecution of the Plaintiff and continued with the prosecution even though it knew or should have known that the prosecution of the Plaintiff was violative of his constitutional rights.

B. The Chicago Police Department failed to supervise the criminal complaint brought against the Plaintiff and initiated by the Department though it knew or should have known that the prosecution of the Plaintiff was violative of his constitutional rights.

C. The Chicago Police Department followed a policy or custom of failing to supervise criminal complaints brought by Chicago Police officers though it knew or should have known that this failure could lead to Civil Rights Act violations.

D. The Chicago Police Department failed to adequately and properly instruct its officers on the proper initiation of criminal charges against citizens including the Plaintiff though this Defendant knew or should have known that the prosecution of the Plaintiff was violative of his constitutional rights.

E. By policy or custom, the Chicago Police Department failed to supervise the initiation and prosecution of criminal complaints though this defendant should have known that the prosecution of the Plaintiff was violative of his constitutional rights.

F. The procedures of the Chicago Police Department led to the continued wrongful incarceration of the Plaintiff.

Complaint ¶ 2

Despite this sweeping allegation, plaintiff's complaint points to no facts, other than those pertaining to his own case, which would support his charge. The allegations are purely conclusory and are inspired solely by the treatment to which the plaintiff was allegedly subjected. Even assuming the truth of all of the allegations, plaintiff has not specifically alleged anything more than a single incident of wrongful conduct by the supervisors of the Chicago Police Force. That allegation is made in paragraph 4 of the complaint where it is asserted that Defendant Ray Johnson, whose relationship to the other defendant officers is not explained, reviewed the charges, discovered them to be unfounded and yet failed in any way to prevent plaintiff's incarceration. This Court simply cannot find that this single allegedly intentional and deliberate act provides sufficient factual basis for the all-encompassing charges contained in paragraph 11 of plaintiff's complaint.

This Court is, of course, mindful of the difficulty of making particularized allegations prior to reaping the benefits of full discovery. *See generally Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). And it is true that an action should not be dismissed on the pleadings unless it appears that the plaintiff can "prove no set of facts in support of [his] claim ..." *Id.* at 45–46, 78 S.Ct. at 102. However, this Court also fully concurs with the opinion of Judge Newman in the recent case of *Smith v. Ambrogio*, 456 F.Supp. 1130 (D.Conn.1978), where, in the context of a claim similar to that presently before this Court, it was stated:

"A claim of this sort should not be initiated unless there is a sufficient factual basis to justify the extensive litigation that such a claim entails. The typical § 1983 suit against a police officer for his allegedly unconstitutional action generally involves a single episode. Discovery and trial are entirely manageable. But a claim of municipal liability based on alleged policy reflected by a pattern of prior episodes will inevitably risk placing an entire police department on trial. Sweeping discovery will be sought to unearth episodes in which allegedly similar unconstitutional actions have been taken, and the trial will then require litigation of every episode occurring in the community that counsel believes can be shown to involve a similar constitutional violation. Even if a trial of that scope is warranted by a complaint that does allege overt acts with requisite particularity, see *Lewis v. Kugler,* supra 446 [F.2d 1343] Ford 1345 [(3rd Cir.)] (Complaint contained 'detailed factual recitation relating to 25 separate incidents'), *neither a federal court nor a municipality should be burdened with such an action unless a detailed pleading is presented.*

456 F.Supp. at 1137 (emphasis added).

Additionally, it should be noted that even if the plaintiff had been successful in framing his complaint with sufficient particularity to remedy the fatal defect discussed above, there would still remain a serious question as to whether plaintiff could maintain his § 1983 claim against the city. It goes without saying that a threshold requirement for such an action is that the plaintiff be deprived of a right "secured by the Constitution and Laws." *See generally Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). Although this Court's disposition of plaintiff's claim makes it unnecessary to resolve the issue, there is some doubt as to whether plaintiff has met this requirement. Plaintiff has not alleged the existence of a statute or practice which would create a liberty interest in the sort of supervision and second-level investigation which plaintiff claims the City must provide. *cf. Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Nor does this Court's understanding of the relevant doctrine clearly indicate that the Fourth Amendment mandates the practice which, according to plaintiff's assertions, was required. *cf. Baker v. McCollan,* 443 U.S. 137, 145–146, 99 S.Ct. 2689, 2694–95, 61 L.Ed.2d 433 ("[We] do not think a Sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence . . ."). This Court, as has already been stated, does not decide this question; however, the problem indicates that plaintiff's complaint may contain deficiencies beyond his inadequate pleading.[2]

■ The City of Chicago has also moved to dismiss the remaining counts against it; however, this Court feels that the doctrine of pendant jurisdiction dictates that resolution of those claims should remain a part of the final judgment in this case. *See generally United Mineworkers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Plaintiff's state-law claims against the City arise from a "common nucleus of operative fact" with plaintiff's federal claims brought against the individual defendants, and considerations of judicial economy and convenience make prudent the resolution in a single lawsuit of the entire controversy related to plaintiff's incarceration. *Id.* at 727–728, 86 S.Ct. at 1139–40.[3]

**2.** The Court's comments do not in any way affect its view of the potential liability of Defendant Ray Johnson, the officer who reviewed Defendant Mario Garcia's report. Plaintiff's allegations against Johnson suggest *intentional* involvement in what may well be labeled a conspiracy to deprive plaintiff of his liberty. Thus the charge is certainly different from one of a mere failure to supervise and investigate. See p. 696, infra.

**3.** Plaintiff's state-law claims against the City are not technically pendant *claims* because no federal cause of action remains against the municipality. Rather, this defendant has become a pendant *party,* the claims against which are pendant, not to a federal claim against that party, but rather to federal claims brought against other defendants. The principles of *Gibbs* are, however, fully applicable in the pen-

## DEFENDANT SHELBY ROWE'S MOTION FOR SUMMARY JUDGMENT

As has already been stated, Defendant Rowe is a party to this action because, it is alleged, he wrongfully issued a warrant for an alleged parole violation by the plaintiff, despite the fact that Rowe knew or should have known that no just cause existed for the warrant because plaintiff was in full compliance with the terms of his parole.

The facts relevant to Rowe's motion as stated in defendant's brief are as follows. Plaintiff was arrested on May 8, 1980 in Oak Lawn, Illinois, and charged with the offenses of unlawful use of weapons (knife), criminal trespass to a motor vehicle, possession of a stolen automobile and driving with a suspended license. A warrant for a parole violation was then found to be outstanding.

A parole violation warrant had been issued on March 21, 1979, at the request of Defendant Rowe, plaintiff's parole officer at that time. The basis of the violation was that plaintiff had absconded from supervision in violation of Rule 1 of the parole agreement and had failed to submit monthly reports in violation of Rule 5–C of the parole agreement. An additional count of violation of parole was added to the Notice of Charges to the plaintiff by Shelby Rowe after the plaintiff's arrest on May 8, 1980, in Oak Lawn, Illinois. That charge, the subject of this action, reflected a violation of Rule 2 of plaintiff's parole agreement for the violation of criminal statutes.

Defendant Rowe seeks summary judgment in his favor on several grounds. He argues 1) that he is entitled to immunity for his actions as a parole officer; 2) that the plaintiff was not falsely imprisoned since he was subsequently found to be in violation of parole; 3) that the Court of Claims Act preempts the jurisdiction of this Court; and 4) that this Court should decline to hear any pendant jurisdiction claims because of the insubstantiality of the underlying federal claim.

 This Court does not accept defendant's argument that Officer Rowe is entitled to absolute immunity from suit arising from his duties as a parole officer. Although it is true that parole officers are frequently engaged in quasi-judicial functions and are entitled to immunity with regard to their conduct while pursuing these functions, many of a parole officer's activities are non-adjudicatory, and as a result require no immunity.[4] *See e.g. Douglas v. Muncy*, 570 F.2d 499, 501 (4th Cir. 1978) (immunity found in challenge to parole revocation, a quasi-judicial function); *McDaniel v. Rhodes*, 512 F.Supp. 117, 120 (S.D.Ohio 1981) (distinguishes "quasi-judicial" and "non-adjudicatory" functions); *accord Pate v. Alabama Board of Pardons and Paroles*, 409 F.Supp. 478, 479 (M.D.Ala.1976) (parole revocation is adjudicatory function entitling officer to immunity; quasi-judicial distinguished from administrative functions); *see also Sellars v. Procunier*, 641 F.2d 1295, 1303 (9th Cir.) *cert. den.* —— U.S. ——, 102 S.Ct. 678, 70 L.Ed.2d 644 (1981).

In the instant case, the action taken by Shelby Rowe was administrative rather than judicial. Rowe's request that a warrant issue against the plaintiff was not a determination that the plaintiff's parole should be revoked. That decision was in fact made 31 months after the defendant requested the issuance of the warrant and was made by the Illinois Prisoner Review Board, of which the Defendant Shelby Rowe has never been a member. Plaintiff is correct in pointing out that Rowe's function in requesting that a warrant issue was "more nearly akin to that of an administrator, police officer or a clerk than to that of a judge or a member of a parole board who imposes sentences or grants or denies probation." (Plaintiff's Memorandum at 9).

---

dant party context. *See Hixon v. Sherwin Williams Co.,* 671 F.2d 1005 (1982).

**4.** A "functional comparability" test is supported by Supreme Court precedent. *Butz v. Economu,* 438 U.S. 478, 512–517, 98 S.Ct. 2894, 2913–16, 57 L.Ed.2d 895 (1978); *see also Sellars v. Procunier,* 641 F.2d 1295, 1298 (9th Cir.) *cert. den.* —— U.S. ——, 102 S.Ct. 678, 70 L.Ed.2d 644 (1981).

■ This Court's determination that Defendant Rowe is not entitled to absolute immunity does not end the inquiry, however. The possibility remains that qualified immunity, premised on a finding that Rowe had acted in good faith, might still be granted Rowe. *See e.g. Thompson v. Burke*, 556 F.2d 231 (3rd Cir. 1977). This Court believes, however, that a finding of good faith is one which must be made at trial rather than at this stage in the proceedings, and thus summary judgment on qualified immunity grounds must be denied at this time. *See Scheuer v. Rhodes*, 416 U.S. 232, 242–243, 249–250, 94 S.Ct. 1683, 1689–90, 1692–93, 40 L.Ed.2d 90 (1974).[5]

■ Defendant's argument that he is entitled to summary judgment on plaintiff's false imprisonment charge, because plaintiff was ultimately found to be in violation of parole, is also rejected by this Court. Implicit in this argument is an assumption of good faith on the part of Defendant Rowe. As has already been stated, however, resolution of the question of the existence or non-existence of good faith behavior on the part of Rowe must be resolved by the jury.

■ Finally, this Court cannot accept defendant's argument that the Court of Claims Act preempts jurisdiction over the claims alleged in Count IV of plaintiff's complaint. The mere fact that indemnification of Defendant Rowe may occur if he is found liable in this suit does not of itself make the State of Illinois a real party in interest in the instant case, and thus the authority cited by defendant inapposite. To the extent that this Court's decision is inconsistent with the holding in *Martin v. Rowe*, Case No. 79 C 3709 (N.D.Ill., 1981), this Court must respectfully disagree with that opinion.

**THE INDIVIDUAL OFFICERS' MOTIONS TO DISMISS**

■ This Court finds that plaintiff has successfully stated claims based on Federal and State Law against the individual officers. For that reason, their motions to dismiss are denied.

In summary, Defendant City of Chicago's Motion to Dismiss plaintiff's § 1983 claim is granted. The Motion to Dismiss the pendant state claims is denied. Defendant Shelby Rowe's Motion for Summary Judgment is denied, as are the Motions to Dismiss of the individual police officers.

IT IS SO ORDERED.

---

5. There remains a factual dispute as to the terms of plaintiff's parole agreement. As has already been stated, the alleged basis for the warrant was that the plaintiff had absconded from supervision and failed to submit monthly reports. The plaintiff, however, states that defendant Rowe had authorized plaintiff to report on a periodic rather than monthly basis, and that plaintiff had in fact kept in periodic contact with Rowe prior to the requested issuance of the parole violation warrant. Resolution of this controversy will of necessity require a credibility determination which must be left to the jury.