Roy Gerald HAMRICK, Administrator of the Estate of Steven Hamrick, Deceased, Plaintiff,

v.

Dennis LEWIS, individually and as Sergeant of the Villa Park Police Department; Ronald Ohlson, individually and as patrolman of the Villa Park Police Department; Roger Kniceley, individually and as patrolman of the Villa Park Police Department; Norman Hall, individually and as detective of the Villa Park Police Department; Scott Schroeder, individually and as patrolman of the Villa Park Police Department; Donald Grobl, individually and as patrolman of the Villa Park Police Department; William Kohnke, as Chief of Police of the Villa Park Police Department; James Glennon, individually and as patrolman of the Lombard Police Department; Mr. Laitsch (first name unknown), individually and as patrolman of the Lombard Police Department; The Village of Villa Park, a Municipal Corporation; The Village of Lombard, a Municipal Corporation; and Other Employees of the Above-mentioned Corporations as yet unknown to Plaintiff at this time; Greg Snyder, individually and as an employee of the Villa Park Police Department, Defendants.

No. 80 C 6040.

United States District Court, N. D. Illinois, E. D.

May 13, 1981.

Shelby H. Kanarish, Harvey L. Walner & Associates, Chicago, Ill., for plaintiff.

Marvin J. Glink, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Roy Gerald Hamrick ("Hamrick") filed this civil rights action in his capacity as administrator of his son Steven's estate against the Villages of Villa Park and Lombard, Chief William Kohnke of the Villa Park Police Department, eight individual police officers of the Villa Park and Lombard departments, and several named and unnamed village employees seeking $10,000,000 in compensatory and punitive damages for the defendants' al-

leged violation of Steven's fourth, fifth, sixth, eighth, and fourteenth amendment rights as well as 42 U.S.C. § 1983. Hamrick alleges that during the early morning hours of August 15, 1980, the police officers, acting pursuant to governmental policy or custom, forcibly entered Steven's home without a search or arrest warrant, chased him into the bathroom, smashed down the bathroom door, and shot Steven in the back of the head as he apparently tried to flush pills or other evidence down the toilet. Steven died of his wound approximately one hour later. Jurisdiction over the federal claims is asserted pursuant to 28 U.S.C. § 1343. Hamrick has also appended wrongful death and survival actions against the same defendants under Illinois law pursuant to this Court's pendent jurisdiction. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

■ This matter is now before the Court on the motion of both villages and Chief Kohnke for dismissal of the amended complaint for failure to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6).[1] The guidelines to be used in considering a motion to dismiss are clear. A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to the relief requested. *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). As the Seventh Circuit has noted:

> Under the Federal Rules of Civil Procedure, it is well established that, on a

motion to dismiss, a complaint must be construed in the light most favorable to the plaintiff, the allegations thereof being taken as true; and if it appears reasonably conceivable that at trial the plaintiff can establish a set of facts entitling him to some relief, the complaint should not be dismissed.

*Mathers Fund, Inc. v. Colwell Co.*, 564 F.2d 780, 783 (7th Cir. 1977).

## MUNICIPAL LIABILITY UNDER MONELL

In *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that municipalities and other local governmental entities are "persons" subject to liability under 42 U.S.C. § 1983 for constitutional deprivations occasioned by virtue of a governmental custom, policy, ordinance, regulation, or decision, whether or not such custom or policy has been formally adopted or approved through the governmental entity's official decision making channels.[2] Since *Monell*, the lower federal courts have struggled with the difficult task of determining just what is sufficient to state a claim for relief under the standard for municipal liability set forth in that case consistent with the liberal boundaries of federal notice pleading, Fed.R. Civ.P. 8(a), and the fairly low threshold of *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957), in the context of a motion to dismiss.

■ While it is unnecessary to show formal, documentary approval of a governmental custom or policy in order to state a

---

1. The remaining defendants have answered the complaint.

2. The Court articulated the following standard for imposing liability on a municipality or other governmental body:

> Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, although the

touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 'person,' by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels.

436 U.S. at 690–91, 98 S.Ct. at 2035–36 (footnote omitted).

claim under *Monell*, it is necessary to allege more than a single incident of illegality as evidence of a governmental policy, custom, or practice in order to state a claim for relief. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 167–68, 90 S.Ct. 1598, 1613–14, 26 L.Ed.2d 142 (1970); *Turpin v. Mailet*, 619 F.2d 196, 202 (2d Cir. 1980); *Gomez v. City of West Chicago*, 506 F.Supp. 1241, 1245 (N.D.Ill.1981); *Magayanes v. City of Chicago*, 496 F.Supp. 812, 814 (N.D.Ill.1980). In order to state a claim for relief against a municipality, a section 1983 plaintiff must do more than merely parrot the language of *Monell* or copy conclusory language from assorted decisions of other courts in which *Monell*-type claims have been upheld, at least at the pleading stage, as Hamrick has apparently done in the case at bar.[3] *Cohen v. Illinois Institute of Technology*, 581 F.2d 658, 663 (7th Cir. 1978), *cert. denied*, 439 U.S. 1135, 99 S.Ct. 1058, 59 L.Ed.2d 97 (1979) ("a pleading is insufficient to state a claim under the Civil Rights Act if the allegations are mere conclusions."). *Koch v. Yunich*, 533 F.2d 80, 85 (2d Cir. 1976); *Landesman v. City of New York*, 501 F.Supp. 837, 839 (E.D.N.Y.1980). There must be a factual basis asserted for the plaintiff's claim that he was a victim of acts undertaken pursuant to a pattern or practice equivalent to unofficial authorization.

■ Moreover, although the United States Court of Appeals for the Second Circuit has indicated in dicta on occasion that a *Monell* cause of action may be stated merely by pleading a particularly egregious act perpetrated by the police or other municipal employees, *see Turpin v. Mailet*, 619 F.2d 196, 202 (2d Cir. 1980); *Owens v. Haas*, 601 F.2d 1242, 1247 (2d Cir. 1979), neither the court of appeals for this circuit nor the district courts have recognized the sufficiency of such a complaint. A construction of *Monell* that would allow municipal liability to be predicated upon a single, isolated instance of illegality or misconduct, no matter how egregious the incident, would seem to broaden the impact of that decision in which the Court expressly stated that a governmental body could not be held liable under the theory of respondeat superior. *Monell v. Department of Social Services*, supra, 436 U.S. at 693–94, 98 S.Ct. 2037–38.

■ In the instant case, Hamrick has alleged a single, wrongful incident—the asserted unconstitutional search and arrest of Steven in his home that resulted in his death—allegedly perpetrated pursuant to an official policy, custom, or practice of the Villages of Villa Park and Lombard. Hamrick fails to allege the occurrence of similar incidents in these two municipalities so that, on the face of the amended complaint, it appears that Hamrick is attempting to state a claim against the villages solely on the basis of an isolated instance of police misconduct. As this Court and others have clearly stated, "a single instance of individual officers' misconduct . . . however reprehensible if true, does not indicate systematic, city-supported abuses of the nature to which *Monell* makes reference." *Magayanes v. City of Chicago*, supra, 496 F.Supp. at 814; *Gomez v. City of West Chicago*, supra, 506 F.Supp. at 1245.[4]

Accordingly, the villages' motion to dismiss the amended complaint is granted. It is so ordered.

---

**3.** Paragraph 35 of Hamrick's amended complaint paraphrases language found in *Magayanes v. City of Chicago*, 496 F.Supp. 812, 814 (N.D.Ill.1980), and in the Supreme Court's opinion in *Rizzo v. Goode*, 423 U.S. 362, 371, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). Paragraph 37 is traceable to *Owens v. Haas*, 601 F.2d 1242, 1247 (2d Cir. 1979), and Paragraph 45 is taken almost verbatim from *Turpin v. Mailet*, 619 F.2d 196, 202 (2d Cir. 1980).

**4.** Our decision today is, of course, without prejudice to Hamrick's right to attempt to amend his complaint, if he can, so as to state a claim against the villages consistent with the *Monell* principles as enunciated in this opinion. A complaint that alleges a specific incident of wrongdoing or misconduct, the existence of similar such incidents, and a governmental policy, custom, or practice of perpetrating such wrongs upon persons such as the plaintiff in a section 1983 case adequately frames the issues to be decided and gives the parties a basis for initiating discovery directed toward proving or disproving the ultimate question of liability.

## LIABILITY OF SUPERVISORY PERSONNEL

■ Chief Kohnke of the Villa Park Police Department moves to dismiss the amended complaint as to himself for failure to state a claim upon which relief can be granted. In order to establish liability against supervisory personnel under section 1983, there must be an affirmative link proven between their acts and omissions and the actions directly causing the alleged violation. *See Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *Jamison v. McCurrie*, 565 F.2d 483 (7th Cir. 1977). Because the Seventh Circuit has held that a successful plaintiff under section 1983 must prove malicious or reckless misconduct, with negligence alone being insufficient, *Jamison v. McCurrie, supra; Little v. Walker*, 552 F.2d 193 (7th Cir. 1977), the affirmative link required for supervisory liability requires more than mere negligent supervision of those over whom the supervisor has authority and control. *McDonald v. State of Illinois*, 557 F.2d 596, 601–602 (7th Cir. 1977); *Bonner v. Coughlin*, 545 F.2d 565, 569 (7th Cir. 1976).

> In the case at bar, Hamrick alleges that: Defendant Police Chief WILLIAM KOHNKE participated in, had knowledge of, directed, approved, was personally responsible for, personally cooperated in or was reckless with regard to formulating, organizing and planning official policy which led to and which was the moving force behind the actions which are the subject of this Complaint.

Amended Complaint at ¶ 41. Hamrick further alleges that Chief Kohnke "was personally involved in some way in the wrongdoing complained of in this Complaint," Amended Complaint at ¶ 38, and that he failed "to institute a policy to control the behavior of subordinate employees" in a situation such as the one involving the raid on Steven Hamrick's home which "amounts to deliberate indifference or tacit, if not explicit, authorization of the offensive acts." Amended Complaint at ¶ 42.

■ Hamrick has alleged a link between Kohnke's alleged acts or omissions and the events surrounding the search, arrest, and ultimate death of Steven Hamrick.[5] If the allegations in the amended complaint are true, more than mere negligence is involved. Thus, these allegations adequately state a claim against Chief Kohnke at this stage of the proceedings. Accordingly, Chief Kohnke's motion to dismiss is denied. It is so ordered.

## PUNITIVE DAMAGES

■ The Villages of Villa Park and Lombard also move to strike Hamrick's prayer for punitive damages since the villages are local public entities under the Illinois Tort Immunity Act, Ill.Rev.Stat. ch. 85, §§ 1–101 *et seq.*, which provides that "notwithstanding any other provision of law, a local public entity is not liable to pay punitive or exemplary damages in any action brought directly against it by the injured party." Ill.Rev.Stat. ch. 85, § 2–102 (1979). The Seventh Circuit has held that the Illinois Tort Immunity Act "cannot protect defendants against a cause of action grounded, as here, on a federal statute." *McLaughlin v. Tilendis*, 398 F.2d 287, 290 (7th Cir. 1968). In *Spence v. Staras*, 507 F.2d 554, 558 (7th Cir. 1974), the Seventh Circuit held that, provided certain aggravating circumstances are shown, punitive damages are recoverable under federal law in a section 1983 action, even in the absence of actual loss to the plaintiff. *See also Fact Concerts, Inc. v. City of Newport*, 626 F.2d 1060, 1067 (1st Cir. 1980), *cert. granted sub nom., Newport v. Fact Concerts, Inc.,* —— U.S. ——, 101 S.Ct. 782, 66 L.Ed.2d 603 (1980), *argued* March 13, 1981, 29 Crim.L.Rptr. 4013 (up-

---

**5.** As the Seventh Circuit said in *Murray v. City of Chicago*, 634 F.2d 365 (7th Cir. 1980), *as amended*, at 366–367 (1981), "[t]he defendants should not be permitted to 'get off the hook' by merely pointing the finger at each other. Someone is surely at fault for failing to establish or execute appropriate procedures for preventing such serious malfunctionings in the administration of justice. Plaintiff should be entitled to discovery in order to determine who is the true culprit responsible for the wrong done her." This statement is equally applicable to the case at bar.

holding an award of punitive damages against a municipality in a section 1983 suit).[6]

Accordingly, the villages' motion to strike the request for punitive damages is denied. It is so ordered.

 The villages and Chief Kohnke also move to strike the prayer for punitive damages under the state law wrongful death and survival claims. Illinois law is clear that punitive damages may not be recovered under either the Survival Act, Ill.Rev. Stat., ch. 110½, § 27–6 (1979), or the Wrongful Death Act, Ill.Rev.Stat., ch. 70, §§ 1, 2 (1979). *See Mattyasovszky v. West Towns Bus Company*, 61 Ill.2d 31, 330 N.E.2d 509, 512 (1975); *Rusher v. Smith*, 70 Ill.App.3d 889, 26 Ill.Dec. 905, 910–911, 388 N.E.2d 906, 911–12 (5th Dist. 1979). *See also In re Air Crash Disaster Near Chicago, Illinois, on May 25, 1979*, 644 F.2d 594, at 605–606 (7th Cir., 1981).

Hamrick contends, however, that to deny punitive damages in wrongful death and survival actions while permitting them in personal injury cases violates principles of equal protection, *citing In re Paris Air Crash of March 3, 1974*, 427 F.Supp. 701 (C.D.Cal.1977). Other courts have reached a contrary result. *See Johnson v. International Harvester Co.*, 487 F.Supp. 1176, 1178–82 (D.N.D.1980). Accordingly, the motion to strike the prayer for punitive damages under the state law counts is allowed. It is so ordered.

**6.** *See also Carey v. Piphus*, 435 U.S. 247, 257 n.11, 98 S.Ct. 1042, 1049, 55 L.Ed.2d 252 (1978); *Thompson v. Village of Evergreen Park*, 503 F.Supp. 251, 253 (N.D.Ill.1980).